## Power et al., Administrators, *versus* Thorp.

1. Where a purchaser in order to control an official sale makes representations to cheapen the property, he cannot after he obtains the property on his own terms and price shelter himself from his own fraud under the technical rules applicable to such sales.

2. Legal rules and precepts were not intended to furnish skulking places for fraud, and he who buys property, at an official sale, through a trick or misrepresentation, must not expect to hold it through the help of the courts.

3. Where the representations cheapen the property and the party making them is thereby benefited and other parties interested are thereby thrown off their guard, although the representation was made with no evil intention, nevertheless as the loss must be between two innocent persons it must fall on him who occasioned it.

[Power v. Thorp.]

November 27th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Crawford county:* Of October and November Term 1879, No. 50.

Ejectment by Alexander Power and W. P. Porter, administrators of Robert Hannah, deceased, against George R. Wilson and William Thorp, terre-tenant, for the undivided one-half of certain real estate, known as the Red Mill property, in the city of Meadville.

The title to this property was vested in Edward Ellis on the 20th of November 1863. On the 2d of December 1863, Ellis sold this property to George R. Wilson and Henry A. Howe, by articles of agreement, for $8000. On the 15th day of November 1866, Howe reassigned his interest in the property to Edward Ellis, and on the 22d day of November 1866, George R. Wilson sold his interest therein to Robert Hannah, and on or before December 4th 1866, Hannah paid to Edward Ellis $3000, in full of the balance of purchase-money due from George R. Wilson and H. A. Howe to Ellis.

On the 21st day of February 1866, J. S. Crane entered judgment, in the Court of Common Pleas of Crawford county, against Fred A. Howe and Edward Ellis, for $5000, which was a first lien upon all the real estate of Edward Ellis, upon which judgment there was a credit, October 11th 1866, of $2500.

An alias fi. fa. was issued to No. 104 January Term 1868, upon the aforesaid judgment, and real estate of Edward Ellis was sold, amounting to $5755, which money was receipted to the sheriff by William Thorp, and applied to the payment of judgments against E. Ellis, entered after the Crane judgment. This was done with the consent of Ellis, as shown by a memorandum of agreement, dated April 29th 1868.

A pluries fi. fa. was issued upon the same judgment to No. 114, June Term 1868, and levy made upon a lot in the city of Meadville, and also on the mill property in dispute, as the property of Edward Ellis and F. A. Howe. The first-mentioned property was sold for $4000, and the mill property was sold for $2110 to William Thorp, and the proceeds of the sale, except the costs, were paid to Thorp.

At this sale, Thorp, by his attorney, gave notice, that the title being sold was the undivided one-half of the property known as the Red Mill property, and that Robert Hannah owned the other half, which is the property in dispute. This notice was repeated by the sheriff, and the bidders proceeded on the supposition that the notice was true; and it was alleged, Thorp thereby got the property at one-half the value of the whole property.

At the trial, plaintiffs offered "to prove by the testimony of A. B. Richmond, Pearson Church and others, that at this

sheriff's sale William Thorp, by his attorney, Pearson Church, gave notice, that the title being sold was the undivided one-half of the property known as the Red Mill property, and that Robert Hannah owned the other undivided one-half, which is the property in suit; that this notice was repeated by the sheriff; and that the biddings at the sale proceeded on the supposition that the notice was true, and that William Thorp thereby got the property at one-half the value of the whole property. This, offered for the purpose of estopping Thorp from claiming that he obtained by virtue of that sheriff's sale, more than the undivided one-half of the property; and also for the purpose of showing, that he has no equities derived by or under that sale, available in this case as a defence to the payment of purchase-money in this suit. We propose to follow this by evidence, that the judgment was in fact paid by the sheriff's sale of the property of Dr. Ellis, made in January 1868, and by other sales made prior to this sale of the Red Mill property."

" Offer overruled as to all, excepting the offer to prove the judgment was satisfied." (Second assignment of error.)

The following were among the points of defendants, both of which the court affirmed:

1. That under and by virtue of the sheriff's sale of June 8th 1868, under the judgment of Duffield, administrator of Crane *v.* Howe and Ellis, and the sheriff's deed made in pursuance thereof, William Thorp acquired the legal title to the whole of the premises in dispute, subject to the right of Robert Hannah or his heirs, to the undivided one-half thereof, upon the payment to said Thorp of the balance of the purchase-money due under the articles of agreement between Edward Ellis, and Howe, and Wilson, on the 21st day of February 1866, the date of the entry of the judgment on which said land was sold. (Tenth assignment.)

4. That under all the evidence in this case, the verdict should be for the defendant. (Eleventh assignment.)

In the general charge the court, inter alia, said:

" Under that judgment the land was sold and purchased by William Thorp, who, so far as the legal effect is concerned, was an innocent purchaser without notice. There is no equitable defence against that judgment. That sale vested in Thorp a good title to the land. Thorp under that sale went into possession.

" As to transfers afterwards, we think they have little to do with the case. We think that the holder of a legal or equitable interest by virtue of an outstanding agreement, whatever his equities may be upon that contract, or however much he might enforce them at law in an action upon this contract, cannot maintain an action of ejectment against the holder of a legal title in possession of the land." (Thirteenth assignment.)

[Power v. Thorp.]

Verdict for defendants, and after judgment plaintiffs took this writ and alleged, inter alia, that the court erred as set forth in the above assignments of error.

*A. G. Church* and *Bole & Fry*, for plaintiffs in error.—We contend that Thorp got nothing by the purchase at the sheriff's sale. The sale was void because the judgment had been previously fully paid by the sale of Edward Ellis's property in January 1868, and by the sale of the house and lot on Water street on the same day, but before the sale of the mill property, and William Thorp knew of its payment and had himself received the money from the · sales by which its lien on the land was divested.

A purchaser at sheriff's sale with knowledge that the judgment has been satisfied acquires no title: Vide Hoffman v. Stroheckler, 7 Watts 86; also Gibbs v. Neely, Id. 305.

The plaintiffs further contend that if the sale was valid Thorp only bought an undivided one-half interest in the property, because, as the plaintiffs offered to prove, he attended the sale, with his attorney, and gave notice that they were selling only an undivided one-half interest, and that Robert Hannah owned the other undivided half interest, which notice was repeated by the sheriff, and the land was sold and stricken off to him with that understanding, for less than the value of the whole, and that he is thereby estopped from claiming more than the undivided one-half interest: Shultze v. Diehl, 2 P. & W. 273; Eshbach v. Zimmerman, 2 Barr 315; Commonwealth v. Moltz, 10 Id. 530.

*J. B. Brawley*, for defendant in error.—A judgment obtained against the vendor of land after the execution of an article of agreement and before execution of a deed binds the legal estate of the vendor, and on a sale under such judgment the sheriff's vendee stands precisely in the situation of the original vendor, and is entitled to the unpaid purchase-money, payment of which may be enforced by ejectment against the terre-tenant: McMullen v. Wenner et al., 16 S. & R. 18; Garrard v. Lantz, 2 Jones 193; Vierheller's Appeal, 12 Harris 107; Mellon's Appeal, 8 Casey 128. The quantity of land which passes at sheriff's sale to the purchaser is to be ascertained by the extent of the levy: Hoffman v. Danner, 2 Harris 25; Heartley v. Beaum, 2 Barr 165, 172; Grubb v. Guilford, 4 Watts 223. The only remedy for misrepresentation, not fraudulent, but affecting the rights of either party to a sheriff's sale, is an application to set aside the sale: Reigle v. Serger, 2 P. & W. 340; Fretz v. Heller, 2 W. & S. 397.

A sheriff is bound by the statute to sell the debtor's interest in real estate levied, whatever it may be, without terms or conditions affecting the title: Aulenbaugh v. Umbehauer, 8 Watts 48; Same

[Power *v.* Thorp.]

*v.* Same, 3 W. & S. 259; Wood *v.* Levis, 2 Harris 9; Randolph's Appeal, 5 Barr 242. The declarations of the crier when selling lands under an order of the Orphans' Court are not to be admitted in evidence to contradict the conditions of sale which had been publicly read: Vandever *v.* Baker, 1 Harris 121.

Robert Hannah was in no way injured by the notice, and could not have been. The sale did not affect his rights. That sale could not prevent his heirs bringing suit to enforce the contract between Ellis and Wilson assigned to him.

Mr. Justice GORDON delivered the opinion of the court, January 5th 1880.

On the 21st of February 1866, when the Crane judgment was entered, it became a lien on the legal estate of Ellis which he held by virtue of his articles with Howe and Wilson, and upon the equity of Howe. When, therefore, Hannah bought Wilson's interest in the property he took subject to the Crane judgment to the extent of the purchase-money due from Wilson to Ellis—some $3000. Hannah paid this money to Ellis, and entitled himself to a deed from Ellis, which, however, was never executed, probably because of the encumbrance above mentioned. Then, at the time of the sheriff's sale, matters stood thus: Ellis, having extinguished Howe's interest, owned one-half of the property and Hannah owned the other half; both shares being subject to the lien, as above stated. The utmost, therefore, that the purchaser could take by virtue of the sheriff's sale was the fee in one-half of the premises and the legal estate in the other half. By virtue of this legal title he could enforce the payment, or rather repayment of the purchase-money from Hannah, but his right of possession extended only to one-half of the property. Wilson bought Hannah's interest by articles of agreement dated March 17th 1870, agreeing to pay him, therefore, the sum of $2500 in five payments. Thus, Hannah, in turn, stood as vendor of Wilson and could have enforced payment by ejectment. I suppose it will not be doubted but that had any one but Thorp, in whom was the legal title, bought Wilson's interest, he would have been liable for the purchase-money due Hannah, and that payment might have been enforced as above stated. But why was Thorp, after his purchase of Wilson's interest, in a better position? As owner of the legal title, he was not entitled to the possession of Hannah's half that he obtained through Wilson, and in order to hold it against Hannah he must pay as Wilson had agreed to pay. The only difficulty in the way of thus enforcing this agreement against Thorp is, if he, by virtue of the sheriff's sale, was entitled to that interest in the property which was bound by the lien of the Crane judgment, then he had some $3000 of the original agreement between Ellis and Wilson which he might recover against the amount due on

[Power *v.* Thorp.]

the Hannah articles, and as he could thus more than cover that amount, an action against him would be fruitless.

After all then, the main and perhaps the only question of the case is, what did Thorp acquire by the sheriff's sale? The answer to this is, if we take the plaintiff's offer, as we are bound to do, as proved, nothing more than Ellis's interest, the fee in one-half of the property and the bare legal title at most in the other half. He caused notice to be given at the sheriff's sale that what was to be sold was the one undivided half part of the Red Mill property, that the other half belonged to Robert Hannah. Under this notice the sale was made, for it was repeated by the sheriff, and under and subject to that notice he bought. By it of course Hannah was thrown out; it left him no interest to protect, and hence he would give no further attention to the sale. Moreover, in this manner Thorp got the property for less than the value of the Hannah equity, and if he holds that equity he gets the other half for nothing. But to permit him now to enjoy the benefit of that equity, would be to permit him to commit a gross fraud upon the rights of Hannah. It is indeed not controverted that the sheriff's sale would, of itself, have vested in Thorp whatever was covered by the Crane judgment, the limitation or restriction of the effect of that sale arises from Thorp's own act, and by that act he is bound.

It would not do to allow a purchaser to control an official sale, make what representations he pleased, in order to cheapen the property, and then, after he has obtained the property, on his own terms and at his own price, permit him to shelter himself from his own fraud under the technical rules applicable to such sale. Legal rules and precepts were not intended to furnish skulking places for fraud, and he who buys property, at an official sale, through a trick or misrepresentation, must not expect to hold it through the help of the courts: Buchanan *v.* Moore, 13 S. & R. 304; Miller *v.* Miller, 10 P. F. Smith 16; McCaskey *v.* Graff, 11 Harris 321; Walter *v.* Gernant, 1 Id. 315.

It is more than probable that Thorp intended nothing wrong when he made, or caused to be made, the representations at the sheriff's sale; no doubt he thought the levy included only the one-half of the property, and that the sale should be limited to that. But none the less did those representations cheapen the property; none the less was he benefited thereby, and none the less was Hannah thrown off his guard. If then we regard him as innocent of any evil intention, nevertheless as the question will then be one of a loss between two innocent persons, that loss must fall upon him who occasioned it. Furthermore, Thorp loses nothing, since he got all he bargained for, and however innocent he may have been, when he caused the representations to be made, his effort now to turn

[Power *v.* Thorp.]

them to his own profit, to the detriment of Hannah's estate is fraudulent: Kelly *v.* Abers, 16 S. & R. 281.

The foregoing sustains the plaintiff's second, tenth, eleventh and thirteenth assignments of error. We observe nothing else requiring correction. Of course, if the Crane judgment was satisfied at the time Thorp bought, and he knew of that fact, the sale was worthless and he took nothing thereby; but as we understand the court's ruling, the plaintiffs were permitted to show this if they could; if so, they have nothing of which to complain in this particular. We may further remark that, as this was an ejectment for the purpose of enforcing the payment of purchase-money, it was well brought by the administrators.

The judgment is reversed and a new venire ordered.